THERON J. BELL, COMMISSIONER OF LABOR AND INDUSTRY

V.

DOREY ELECTRIC COMPANY

Record No. 931632

September 16, 1994

Present: All the Justices

*John R. Butcher, Assistant Attorney General (Stephen D. Rosenthal, Attorney General,* on briefs), for appellant.

*Guilford D. Ware (Martha M. Poindexter; Grenshaw, Ware & Martin,* on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

The Commissioner of Labor and Industry filed two civil actions against Dorey Electric Company for violating Vocational Occupational Safety standards (VOS standards) adopted by the Virginia Safety and Health Codes Board (the Board) pursuant to Code § 40.1-22(5). Following consolidation of the cases, the trial court dismissed both matters. The trial court found that the statute was an unconstitutional delegation of legislative authority because it failed to include sufficient standards and guidelines to direct or limit the Board in exercising the delegated authority. The sole issue on appeal is the constitutionality of Code § 40.1-22(5).

In considering constitutional challenges to statutes that delegate authority to administrative agencies, we have recognized that such delegation is essential to carry out the legitimate functions of government. If nothing could be left to the judgment and discretion

of administrative officers, government could not be efficient and the legislation itself would become "either oppressive or inefficient." *Thompson v. Smith*, 155 Va. 367, 379, 154 S.E. 579, 584 (1930).

Nevertheless, while statutes enjoy the presumption of constitutionality, "delegations of legislative power are valid only if they establish specific policies and fix definite standards to guide the official, agency, or board in the exercise of the power. Delegations of legislative power which lack such policies and standards are unconstitutional and void." *Ames v. Town of Painter*, 239 Va. 343, 349, 389 S.E.2d 702, 705 (1990). Whether the legislative delegation in this instance is constitutional depends on the specific provisions of the statute.

Code § 40.1-22(5) provides:

The Board, with the advice of the Commissioner, is hereby authorized to adopt, alter, amend, or repeal rules and regulations to further, protect and promote the safety and health of employees in places of employment over which it has jurisdiction and to effect compliance with the Federal Occupational Safety and Health Act of 1970 (P.L. 91-596), and as may be necessary to carry out its functions established under this title. The Commissioner shall enforce such rules and regulations. All such rules and regulations shall be designed to protect and promote the safety and health of such employees. In making such rules and regulations to protect the occupational safety and health of employees, the Board shall adopt the standard which most adequately assures, to the extent feasible, on the basis of the best available evidence, that no employee will suffer material impairment of health or functional capacity. However, such standards shall be at least as stringent as the standards promulgated by the Federal Occupational Safety and Health Act of 1970 (P.L. 91-596). In addition to the attainment of the highest degree of health and safety protection for the employee, other considerations shall be the latest available scientific data in the field, the feasibility of the standards, and experience gained under this and other health and safety laws. Whenever practicable, the standard promulgated shall be expressed in terms of objective criteria and of the performance desired. Such standards when applicable to products which are distributed in inter-

state commerce shall be the same as federal standards unless deviations are required by compelling local conditions and do not unduly burden interstate commerce.

In holding that this statute was unconstitutional, the trial court focused on that part of the legislation directing the Board to adopt standards and concluded that

it is the legislature and not the Board which must adopt the standards, and that even if the Board could so act, the language of the statute establishes only a floor with regard to the stringency of such regulations and standards but it does not define them adequately and leaves the board free to adopt almost any standards above that floor that it sees fit.

Before beginning our analysis, we need to clarify the use of the term "standard." In the context of this case, the term has two different applications. First, the statute uses the term "standard" to mean a rule or regulation which the General Assembly has authorized the Board to enact, such as the VOS standards. The term "standard" is also used in referring to a limitation or direction placed in the statute by the General Assembly to operate as a constraint on the Board's exercise of the legislatively delegated authority. This type of standard is a "legislative standard." An example of a legislative standard in the statute is the provision that the VOS standards adopted by the Board "be at least as stringent as" those adopted under the federal act.

Apparently the trial court's decision was based at least in part on its belief that the language in the statute directing that "the Board shall adopt the standard" meant that the Board is to adopt the legislative standards, rather than the VOS standards. This is an incorrect application of the term "standard." The statute directs the Board to adopt rules, regulations, and VOS standards to implement the policy stated in the statute; it does not direct the Board to adopt legislative standards.

The trial court went on to determine that the requirement of sufficient legislative standards was not satisfied by the general direction in the statute that the regulations be designed to protect and promote the safety and health of employees. We agree that the General Assembly cannot delegate its legislative power accompanied only by such a broad statement of general policy. *Andrews v. Board of Supervisors*, 200 Va. 637, 641, 107 S.E.2d 445, 448

(1959). We have held, however, that delegations of authority are adequately limited where the terms or phrases employed have a well understood meaning, *DuVal v. VEPCO*, 216 Va. 226, 217 S.E.2d 844 (1975), and prescribe sufficient standards to guide the administrator, *Ours Properties, Inc. v. Ley*, 198 Va. 848, 96 S.E.2d 754 (1957).

■ This statute contains at least three additional directives which, although not addressed by the trial court, sufficiently direct and limit the authority delegated to the Board. Rules, regulations, and VOS standards adopted by the Board must be (1) feasible, (2) based on the best available evidence, and (3) limited to conditions which would materially impair the health or functional capacities of the employee.

■ All three directives or standards in the statute have meanings which are clear and self-evident, and these directives can be interpreted only in accordance with these meanings. The term "feasible" means simply that which is "capable of being done." *See American Textile Mfrs. Inst. v. Donovan*, 452 U.S. 490, 508-09 (1981). The phrase "best available evidence" is a term of art commonly used in our jurisprudence. "Best evidence" is "the best evidence which is available to a party and procurable under the existing situation." *Black's Law Dictionary* 160 (6th ed. 1990). Just as we have found that the term "emergency" is "understandable by laymen and lawyers alike," *DuVal*, 216 Va. at 228, 217 S.E.2d at 846, a "material" impairment is understood easily by the layman as an impairment having "real importance or great consequence." *Webster's Third New Int'l Dictionary* 1392 (1981). Since all three guidelines are "not easily subject to misunderstanding," they are not unconstitutionally vague for lack of adequate definition. *DuVal*, 216 Va. at 228, 217 S.E.2d at 846.

■ These directives provide sufficient legislative standards to guide the Commissioner in establishing regulations, and also establish a legally discernible standard by which a court could review subsequent challenges to the Board's rules. Thus, for example, a VOS standard which required implementation of technology not available in the United States would violate the standard of feasibility.

In *Ours*, we held that "satisfactory evidence" was a sufficient standard. 198 Va. at 853, 96 S.E.2d at 758. A "best available evidence" standard similarly is directed in limiting that evidence which the Commissioner may use as a basis for the regulations.

Thus, a VOS standard based on evidence shown to be faulty or superseded could not be sustained under this statute.

■ Finally, the rules are limited to addressing those conditions which cause "material impairment of health or functional capacity." Therefore, a VOS standard which aimed to provide adequate assurances that no employee would suffer *any* impairment, or one adopted for an employee's convenience, would violate the statute.

These legislative standards placed in the statute by the General Assembly provide a ceiling on the type of rules which may be adopted, and, therefore, contrary to the trial court's conclusion, the Board is not free to adopt any VOS standard it wishes above the "floor" of the federal act. Furthermore, the final three sentences of the section reinforce the factors which must be utilized by the Board when enacting rules, regulations, and standards under this section—use of the best scientific evidence, feasibility, and experience gained from other jurisdictions—as well as provide specific standards to be considered for products in interstate commerce.

■ We conclude that Code § 40.1-22(5) contains sufficient legislative standards and limitations to direct the Board in the exercise of the authority delegated to it by the legislature. Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings.

*Reversed and remanded.*